**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

UNITED STATES OF AMERICA

      Plaintiff,

v.                           CASE No. 2:23-cr-20012-HLT-ADM

SCOTT W. ANDERSON,

      Defendant.

---

**MOTION FOR DISMISSAL OF PORTIONS OF THE INDICTMENT**

---

Comes now Defendant Scott W. Anderson, by and through undersigned counsel, and moves to dismiss portions of counts 3 and 4 of the indictment for the reasons stated herein.

## I.      BACKGROUND

The relevant portions of counts 3 and 4 of the indictment allege:

Count 3.      On or about April 10, 2020, in the District of Kansas, the defendant, Scott W. Anderson, knowingly made a false statement for the purpose of influencing the action of Academy Bank, a financial institution whose accounts are insured by the Federal Deposit Insurance Corporation, in connection with an application and loan, in that the defendant falsely stated that neither he nor any business he controlled was involved in any legal action, that neither Anderson nor any business he controlled had a delinquent loan from SBA within the preceding seven years that caused a loss to the government, and that Anderson and RD Group did not have common management with any other business, all of which Anderson well knew to be false at the time.

Count 4.      On or about April 10, 2020, in the District of Kansas, the defendant, Scott W. Anderson, knowingly made a false statement for the purpose of influencing the action of Academy Bank, a financial institution whose accounts are insured by the Federal Deposit Insurance Corporation, in connection with an application and loan, in that the defendant falsely stated that neither he nor any

business he controlled was involved in any legal action, that neither Anderson nor any business he controlled had a delinquent loan from SBA within the preceding seven years that caused a loss to the government, and that Anderson and Riley Drive Entertainment XIX did not have common management with any other business, all of which Anderson well knew to be false at the time.

The Paycheck Protection Program Application Form (SBA Form 2483) (03/20)(attached hereto as Exhibit A) asked the following questions:

### Question 1

1. Is the Applicant or any owner presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency, or presently involved in any bankruptcy?

### Question 2

2. Has the Applicant, any of its owners, or any business owned or controlled by any of them, ever obtained a direct or guaranteed loan from SBA or any other Federal agency that is currently delinquent or has defaulted in the last 7 years and caused a loss to the government?

### Question 3

3. Is the Applicant or any owner an owner of any other business or have common management with any other business? If yes, attach a listing of all Affiliates and described the relationship as addendum A.

Counts 3 and 4 of the indictment allege that the Defendant knowingly made false statements for the purpose of misleading Academy Bank to make two PPP loans it otherwise would not have made. Specifically, the indictment alleges that Defendant falsely stated:

(A)   neither Defendant nor any business he controlled was involved in any legal action,

(B)     that neither the Defendant nor any business he controlled had a delinquent loan from SBA within the preceding seven years that caused a loss to the government,

(C)     and that Defendant and the applicant business did not have common management with any other business.

For purposes of this Motion, the three distinct alleged false statements in Counts 3 and 4 shall be referred to as the (A) Statement, the (B) Statement and the (C) Statement.

Defendant is moving for dismissal of Counts 3 and 4 with respect to the (A) Statement (Question 1) and the (B) Statement (Question 2). Defendant is not requesting dismissal of the (C) Statement (Question 3). Instead, Defendant will provide evidence at trial that Defendant did cause to be submitted a list of affiliates to Academy Bank.

## II.     STANDARDS FOR DISMISSAL

Fed. R. Crim. P. 12(b) provides that a defendant may "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." This rule allows a court to ask whether the allegations in the indictment, if true, are sufficient to establish a violation of the charged offense and dismiss the indictment if its allegations fail that standard. In other words, a court may entertain a motion to dismiss an indictment if the motion presents a pure question of law. An indictment must set out both the elements of the crime and the factual circumstances that would satisfy those elements when assumed true. Hamling v. United States, 418 U.S. 87, 118-19 (1974). An indictment may be dismissed as constitutionally insufficient when it does not join the elements with factual allegations. See Russell v. United States, 369 U.S. 749, 763-771(1962).

## III.     SUMMARY OF DEFENDANT'S POSITION

Question 1 on the Paycheck Protection Program Application form asked whether the applicant or any owner were presently involved in any bankruptcy. If the applicant answered yes, the application for a PPP loan would be denied.

It is Defendant's position that Question 1 was unconstitutionally vague. Just as the Fourteenth Amendment prohibits a person from being prosecuted for violating a vague statute, the Fourteenth Amendment also prohibits a person from being prosecuted for inaccurately answering a vague question. It is also Defendant's position that the SBA exceeded its statutory authority, acted arbitrarily and capriciously, and violated 11 U.S.C. § 525(a) when it excluded debtors in bankruptcy from participation in the PPP program. Because the SBA had no authority to exclude debtors in bankruptcy, the bankruptcy question on the PPP application was an illegal question which Defendant cannot be convicted of falsely answering.

Question 2 on the Paycheck Protection Program Application form asked whether the applicant or any owner or affiliate were currently delinquent or had defaulted on a SBA loan which had caused a loss to the government. If the applicant answered yes, the application for a PPP loan would be denied.

It is Defendant's position that this question was unconstitutionally vague. Just as the Fourteenth Amendment prohibits a person from being prosecuted for violating a vague statute, the Fourteenth Amendment also prohibits a person from being prosecuted for inaccurately answering a vague question.

## IV.    FACTS

At any hearing on this motion and at trial of this case the Mr. Anderson asserts that the evidence will show that the Riley Drive organization was owned by three individuals – Defendant, Marc Mundt ("Mundt") and Johnny Robb ("Robb"). The Riley Drive organization operated fourteen restaurants or bars in 2019 with gross revenues exceeding $20 million while employing approximately 350 people. On October 29, 2019, Riley Drive Entertainment XV, Inc. dba Saints Pub Lenexa ("Saints Lenexa") filed for Chapter 11 bankruptcy reorganization in the District of Kansas. On January 15, 2020, Riley Drive Entertainment XIX, LLC dba Ignite Wood Fire Grill ("Ignite") filed for Chapter 11 bankruptcy reorganization in the District of Kansas. On March 5, 2020, Defendant filed a Chapter 7 bankruptcy petition in the District of Kansas. All of the Riley Drive restaurants remained open, including Saints Lenexa and Ignite, after the bankruptcy petitions were filed. Defendant was working on plans for reorganization with bankruptcy counsel. Mundt, Robb and the remaining Riley Drive restaurants had not filed for bankruptcy protection.

On March 16, 2020, restaurants and bars were ordered closed because of the Covid pandemic. As a result, the Riley Drive organization was incurring weekly liabilities in excess of $400,000 with no operating revenue. All 350 Riley Drive employees, except one administrative assistant, were laid off.

The Paycheck Protection Program, part of the Coronavirus Aid, Relief and Economic Security Act (CARES Act), was signed by President Trump on March 27, 2020. The CARES Act made no mention of excluding debtors in bankruptcy. On March 31, 2023, the SBA first made the PPP loan application available to the public. This was the first time

the public was made aware of the bankruptcy exclusion. The PPP loan application was accompanied by a PPP Information Sheet which made no reference to the bankruptcy exclusion.

The SBA began accepting PPP loan applications on April 5, 2020. At the time Defendant submitted the PPP loan applications, Defendant had only the language in the PPP loan applications to rely on. There was no additional SBA guidance on how to interpret the relevant questions. Without PPP funds, all 350 of Defendant's employees would remain unemployed, Saints Lenexa and Ignite would be forced to abandon plans for reorganization, and Defendant's remaining twelve restaurants would be forced to permanently close. Defendant had less than five days to review the CARES act, review the application, review the interim rule, discuss the legal implications with bankruptcy and other counsel, and make a decision that would impact business partners, vendors, landlords and the ability of 350 employees to continue to earn a paycheck.

On April 6, 2020, Saints Lenexa and Ignite both submitted applications for PPP loans. Both PPP loans were eventually funded. Saints Lenexa and Ignite maintained the PPP funds in a bank account and did not use the funds. Both Saints Lenexa and Ignite filed motions with the bankruptcy court for approval to incur debt (the PPP loans). The SBA contested these motions and hearings were held. On May 12, 2020, Judge Somers granted the motion to incur debt with respect to Ignite. Despite the fact the bankruptcy court approved Ignite's use of PPP funds, Defendant withdrew Saints Lenexa's application to incur debt and Defendant asked the bank to return all PPP funds to the

federal government. The PPP funds were never used by Saints Lenexa or Ignite and were returned to the federal government.

Mundt submitted three PPP loan applications on three Riley Drive restaurants located in Iowa. Riley Drive Entertainment I, Inc. dba Tonic received $57,844 (the "Tonic Loan"). Riley Drive Entertainment VII, Inc. dba Saints Pub Beaverdale received $74,205 (the "Beaverdale Loan"). Riley Drive Entertainment XVI, Inc. dba Saints Pub Waukee received $34,995 (the "Waukee Loan"). These three PPP loans, which totaled $167,044, were used by the Riley Drive organization to pay employees and rent. The SBA investigated each of these loans. The Beaverdale Loan and the Waukee Loan were forgiven by the SBA. Even though funds were properly spent, the Tonic loan was not forgiven based solely on Defendant's bankruptcy status.

The SBA did publish an interim final rule on April 28, 2020 (Ex. B). The final rule stated as follows: "Will I be approved for a PPP loan if my business is in bankruptcy? No. If the applicant or the owner of the applicant is the debtor in a bankruptcy proceeding, either at the time it submits the application or at any time before the loan is disbursed, the applicant is ineligible to receive a PPP loan." 85 Fed. Reg. 23450, 23451. No additional guidance was provided by the SBA.

Congress did pass the Consolidated Appropriations Act, 2021 (Act) (Pub. L. No. 116-260), which was signed into law on December 27, 2020 (the "CAA"). The CAA amended the United States Bankruptcy Code to permit PPP loans to certain debtors, namely Subchapter V small business debtors, Chapter 12 family farmer debtors, and self-employed Chapter 13 debtors. However, the CAA provided that PPP loans would be

available only if the SBA Administrator in its discretion sent a letter to the Director of the Executive Office for United States Trustee acquiescing to PPP loans in bankruptcy. The SBA refused to send this letter.

On April 6, 2021, the SBA issued additional guidance by answering frequently asked questions (FAQ)(Ex. C). The purpose of the FAQ was "to provide timely additional guidance to address borrower and lender questions concerning the implementation" of the PPP program. In the FAQ, it states that the FAQs do "not carry the force and effect of law independent of the statutes and regulations on which it is based." Specifically, the SBA set forth FAQ 67. In FAQ 67, it clarifies what it means to be "presently involved in any bankruptcy." In the answer, it states where are thre situations that don't constitute involvement in a bankruptcy. The first condition clarified that the owner in bankruptcy must be at least a 20% owner. The second condition included a Chapter 11 reorganization where the plan of reorganization had been confirmed. The third condition included a case where the court had entered an order dismissing the bankruptcy case. A spokesperson for the SBA said the explanation had been added for "clarity." Ed Boltz, a bankruptcy attorney on the National Association of Consumer Bankruptcy Attorneys board, said he believes the SBA changed its position after becoming aware of the foolishness of the prior administration's position.[1]

None of the Riley Drive entities participated in the second round of PPP funding or the Restaurant Revitalization Fund. Had the Riley Drive entities fully participated in

---

[1] https://www.propublica.org/article/ppp-loans-bankruptcy

both rounds of PPP loans and the Restaurant Revitalization Fund, the organization would

likely have received in excess of $8 million. Instead, the organization received $167,044

from the three Iowa loans. As a result, the Riley Drive organization was forced to close

most of its restaurants resulting in the permanent loss of over 300 jobs and the inability

to repay the debt that Defendant allegedly fraudulently incurred.

## V.      DISMISSAL OF THE (A) STATEMENT IN COUNTS 3 AND 4 FOR FAILURE TO STATE A CLAIM

Question 1 in the Paycheck Protection Program Application Form (SBA Form 2483

(03/20) asked the following question:

> Is the Business or any owner presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency, or presently involved in any bankruptcy?

The indictment alleges that Defendant failed to disclose that either he or any entity he

controlled was involved in any legal action. Nowhere on the PPP Application Form does

it ask whether the applicant or any business the applicant controls is involved in any legal

action. Accordingly, the (A) Statement in Counts 3 and 4 of the Indictment should be

dismissed.

## VI.      DISMISSAL OF THE (A) AND (B) STATEMENTS IN COUNTS 3 AND 4 FOR VAGUENESS

### 1.   Legal Standard

The Fourteenth Amendment's guarantee of due process prohibits laws so vague

that persons "of common intelligence must necessarily guess at [their] meaning and differ

as to [their] application." *Smith v. Goguen,* 415 U.S. 566, 572 n.8 (1974) (quoting *Connally*

*v. General Constr. Co.,* 269 U.S. 385, 391 (1926)). "It is a fundamental component of due

process that a law is void-for-vagueness if its prohibitions are not clearly defined."
*Grayned v. City of Rockford,* 408 U.S. 104, 108 (1972); *accord, Jane L. V. Bangerter,* 61 F.3d
1493, 1500 (10th Cir. 1995), *rev'd and remanded on other grounds sub.nom. Leavitt v. Jane L.,*
518 U.S. 137 (1996). Vague laws offend due process in two ways. First, they fail to provide
the persons targeted by the statute with a "reasonable opportunity to know what is
prohibited, so that [they] may act accordingly." *Grayned,* 408 U.S. at 108; *Jane L.,* 61 F.3d
at 1500 (abortion restriction prohibiting "experimentation on "live unborn children" void
for vagueness). Second, by failing to provide explicit standards by which to assess
conduct, vague laws "impermissibly delegate basic policy matters...for resolution on an
*ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory
enforcement." *Grayned,* 408 U.S. at 108-09; *see also Jane L.,* 61 F.3d at 1500. In other words,
by failing to define explicitly what conduct is proscribed, vague laws invite arbitrary and
discriminatory enforcement. *Kolender v. Lawson,* 461 U.S. 352, 357 (1983); *Papachristou v.
City of Jacksonville,* 405 U.S. 156, 170 (1972); *Wallace,* 246 Kan. at 259. "[T]he degree of
vagueness that the Constitution tolerates...depends in part on the nature of the
enactment." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 498
(1982). Statutes that impose criminal penalties are subjected to a higher standard of
certainty in their language than is applicable to other statutes. *See, e.g., Kolender,* 461 U.S.
at 357; and *Goguen,* 415 U.S. at 574-75.

Defendant is accused of falsely answering questions on the PPP application form.
The legal standards that apply to statutes should also apply to questions on the PPP
application form. If a criminal penalty can be imposed on Defendant for falsely answering

a question, the question can't be so vague that a person of common intelligence must necessarily guess at its meaning.

**2.**    *The (A) Statement, <u>as Assumed</u>, is Unconstitutionally Vague*

Defendant assumes that the (A) Statement in the indictment should have alleged that Defendant falsely answered the bankruptcy question. While Defendant will deny this allegation at trial, for purposes of this motion we will assume Defendant answered no to the bankruptcy question.

The question at issue is what does "presently involved in any bankruptcy" mean at the time the original PPP application was distributed and submitted by Defendant, which is before the SBA issued FAQ 67?  On April 2, 2020, the SBA issued interim final rules on the PPP program. The interim rule made no reference to the bankruptcy exclusion. The PPP loan applications were completed online on April 6, 2020. At the time the PPP loan applications were submitted online, there was no published SBA guidance on what "presently involved in any bankruptcy" meant.

With respect to the "business" being involved in any bankruptcy, we can be confident with absolute certainty that the SBA did not intend that "bankruptcy" mean simply being a debtor in bankruptcy. In FAQ 67, the SBA stated that a business was not considered to be presently involved in any bankruptcy if the business had filed a Chapter 11 petition and the court had entered an order confirming the reorganization plan. In this case, the company remains a debtor in bankruptcy whose reorganization plan is being administered by the bankruptcy court. Even the SBA admits that "presently involved in

any bankruptcy" means something other than the applicant is a debtor in an existing bankruptcy proceeding.

It is Defendant's position that a reasonable interpretation of the word bankruptcy meant the applicant business was currently being liquidated in a bankruptcy proceeding. Not only is this interpretation reasonable, but this interpretation also makes the most sense. A company that is being liquidated likely has few or no employees and would have no assets left to repay a PPP loan in the event the loan needed to be repaid.

Saints Lenexa and Ignite both filed Chapter 11 reorganizations. Both companies paid legal counsel almost a combined $100,000 to file the petitions and work on the plans for reorganization. The combined companies continued to employ and pay over 100 employees after filing for bankruptcy reorganization. Both companies operated for approximately three months while in bankruptcy until the restaurants were closed by Covid orders. In fact, both restaurants continued to operate in bankruptcy until August 2020, which was four months after the PPP applications were submitted. The Defendant assumed that the SBA would want Defendant to continue to pay its employees and successfully reorganize so that it could pay its debts. The reference to bankruptcy meaning a bankruptcy liquidation was not only a reasonable interpretation, but it was the only interpretation that made sense.

With respect to "any owner" being involved in any bankruptcy, we can again be confident with absolute certainty that the SBA did not intend that "any owner" simply mean any owner. In FAQ 67, the SBA clarified that "any owner" meant any owner that owned 20% or more of the business.

It is Defendant's position that a reasonable interpretation of the word any owner meant any owner that owned a majority of the business. A person that owns a majority of a business controls the business. Minority owners understand that the business can be bound by the majority. However, excluding a business from participation in the PPP program simply because a non-majority owner was currently in bankruptcy proceedings made no sense. Certainly, the SBA did not intend to prohibit two businesses that employed over 100 people from accessing the PPP funds necessary to continue operations and maintain employment just because a non-majority owner was in bankruptcy. Why punish an owner that owns 50% or more of a business because another owner is in bankruptcy? In this case, Defendant was not a majority owner of either Saints Lenexa or Ignite.

The government will argue that it is common sense Defendant should have known that both an owner and the business were presently involved in a bankruptcy. The government's argument is both unfair and contrary to the adoption of FAQ 67. By definition, FAQ 67 was issued because Question 1 on the PPP application was ambiguous. There is no possible alternative explanation as to why FAQ 67 was issued. In FAQ 67, the SBA admits that the words don't mean what they appear to mean. Defendant read Question 1 on the PPP form and took his best guess on what the SBA intended. Had FAQ 67 said the company was working on a reorganization plan instead of had a planned approved, the Defendant would have been relieved of liability. Had FAQ 67 said any owner that owned more than 50% of the company instead of 20%, the Defendant would have been relieved of liability.

Defendant is not the only one that was confused by the meaning of the words "presently involved in any bankruptcy. "Thus, the bankruptcy confusion continued in PPP round 2.  The PPP application requires that each applicant and any owner of 20% or more of the applicant certify that it is NOT 'presently involved in any bankruptcy' in order to be eligible.  Could there be a more amorphously phrased question?"[2]

Defendant's positions that involved in a bankruptcy meant liquidation and not working on a plan of reorganization, and ownership required a majority of owners, could be correct. FAQ 67 explicitly states it only provides guidance and does not carry the force of law. FAQ 67 is simply the SBA's best guess of what "involved in any bankruptcy" and "owner" means for purposes of the PPP loan application. If contested, a court could find Defendant's positions are correct. At a minimum, Defendant requests that this Court find Question 1 unconstitutionally vague as of the date Defendant completed the PPP application.

### 3.  *The (B) Statement is Unconstitutionally Vague*

Question 2 on the Paycheck Protection Program Application Form (SBA Form 2483 (03/20)(Ex. D) asked the following question:

> Has the Applicant, any of its owners, or any business owned or controlled by any of them, ever obtained a direct or guaranteed loan from SBA or any other Federal agency that is currently delinquent or has defaulted in the last 7 years and caused a loss to the government?

This question is ambiguous and open to interpretation. Interpretation One: Question 2 can be read to state the applicant does not qualify for the PPP if it *EITHER* [A] is currently

---

[2] Dorsey & Whitney Publication April 8, 2021 (https://www.dorsey.com/newsresources/publications/client-alerts/2021/04/sba-clarifies-ppp-loans-and-bankruptcy)

delinquent on a loan to the SBA/Federal Government **OR** [B] has defaulted in the last 7 years AND [C] caused a loss to the government. Interpretation Two: Question 2 can be read to state the applicant does not qualify for the PPP if it **EITHER** [A] is currently delinquent on a loan to the SBA/Federal Government AND [C] caused a loss to the government **OR** [B] has defaulted in the last 7 years AND [C] caused a loss to the government.

Even the SBA admitted Question 2 is ambiguous. The PPP application was subsequently revised by the SBA in March 2021. Question 2 in the revised Paycheck Protection Program Application Form (SBA Form 2483 (03/21)

> Has the Applicant, any owner of the Applicant, or any business owned or controlled by any of them, ever obtained a direct or guaranteed loan from SBA or any other Federal agency (other than a Federal student loan made or guaranteed through a program administered by the Department of Education) that is (a) currently delinquent, or (b) has defaulted in the last 7 years and caused a loss to the government?

The SBA added the (a) parenthetical and the (b) parenthetical because the question was ambiguous. This proves the question was ambiguous and open to two different interpretations.

It was Defendant's understanding from a reading of the question that the government must have incurred a loss on a government guaranteed loan. Not only was Defendant not aware the government had paid a loss on any loan, the Defendant was actually trying to obtain PPP funds to maintain operations and reorganize which would have prevented the government from incurring a loss on an insured loan.

In *United States v. Hall*, 2010 WL 5137499 (D. Kan. 2010), the court stated:

The constitutionality of an arguably vague statutory standard is closely related to whether that standard incorporates a *mens rea* requirement. The presence of a scienter inquiry can save an otherwise vague statute. … Although a specific intent requirement does not necessarily validate a criminal statute against all vagueness challenges, it does eliminate the objection that the statute punishes the accused for an offense of which he was unaware.

*Id.* at 2 (*quoting United States v. Franklin-El*, 554 F.3d. 903, 911 (10th Cir. 2009)). Question 2 does not include a mens rea requirement. If the government proves a loss had been paid, Defendant can be found guilty of improperly answering the question even if it is shown Defendant had no knowledge the government had paid a loss. This complete lack of a mens rea requirement requires that this Court find the (B) Statement in the 2020 version of the PPP loan application to be unconstitutionally vague.

### *4.      Summary*

There is a significant amount of literature that discusses problems that occurred with the SBA implementation and oversight of the PPP program. The common explanation is that this is understandable given the speed with which the SBA had to implement the program. Defendant asks for this same consideration.

This Court should note the speed with which Defendant was required to act. Defendant had two restaurants that were trying to reorganize during bankruptcy with over 100 Kansas employees, most of which were desperate for money and unable to obtain unemployment insurance payments from the state of Kansas because the system had broken down. Once the PPP program was announced, Defendant was receiving non-stop calls from employees, business partners, landlords and vendors desperate for money asking when operations could resume. Defendant had just a few days to read and digest

the language in the PPP application, discuss it with legal counsel and make Defendant's best guess on whether or not an application could be submitted. Given the beyond exigent circumstances that Defendant faced, any possible ambiguity in Questions 1 and 2 on the PPP application should be resolved in favor of Defendant.

### VII.   SBA EXCEEDED ITS STATUTORY AUTHORITY WHICH REQUIRES DISMISSAL OF THE (A) STATEMENT IN COUNTS 3 AND 4

The SBA also exceeded its statutory authority when it excluded debtors in bankruptcy from participation in the PPP program. Because the SBA had no authority to exclude debtors in bankruptcy, the bankruptcy question on the PPP application was an illegal question which Defendant cannot be convicted of falsely answering.

The SBA exceeded its statutory authority when it made the decision to deny PPP loans to debtors in bankruptcy.

> The CARES Act directly addresses the PPP eligibility requirements. It charged Defendant with issuing "regulations to carry out this title...." Section 1114. Defendant had no authority under this charge to change the eligibility requirements. That, however, is exactly what it did. Defendant exceeded its authority by trying to prohibit bankruptcy debtors from getting PPP funds. It is not entitled to *Chevron* deference.

*In Re: Roman Catholic Church of the Archdiocese of Santa Fe v. United States of America Small Business Administration*, 615 B.R. 644, 655 (2020). "The unmistakable implication is that Congress did not intend to exclude bankruptcy debtors from the PPP." *Id.* at 654.

In *U.S. Small Business Administration v. Roman Catholic Church of the Archdiocese of Santa Fe*, 632 B.R. 816 (2021), the magistrate judge reviewed and reversed the decision of the bankruptcy court. The Court applied the *Chevron* doctrine, *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council*, 467 U.S. 837 (1984), to uphold the SBA's exclusion of debtor's in

bankruptcy. In fact, all cases that have held the SBA did not exceed its statutory authority have relied on the *Chevron* doctrine.

The Supreme Court is preparing to overturn the *Chevron* decision.[3] The issue in *Loper Bright Enterprises v. Raimondo* (Supreme Court Docket No. 22-451) is whether the Supreme Court should overrule *Chevron*, or at least limit its applicability. In particular, the Court has been asked to find that Congress' silence on a disputed matter does not equal statutory uncertainty. During oral arguments on the Medicare rule earlier this year, Justices Thomas, Alito and Gorsuch all signaled they were prepared to overrule *Chevron*.

Courts that have ruled in favor of the SBA in excluding debtors in bankruptcy have relied on the CARES act's silence with respect to debtors in bankruptcy creating an ambiguity that the SBA was entitled to fill using *Chevron* deference. Absent *Chevron* deference, the exclusion of debtor's in bankruptcy would have never been upheld. Defendant respectfully asks this Court to not apply *Chevron* deference to the SBA's exclusion of debtor's in bankruptcy and hold that the SBA exceeded its statutory authority.

## VIII.   SBA ACTED ARBITRARILY AND CAPRICIOUSLY WHICH REQUIRES DISMISSAL OF THE (A) STATEMENT IN COUNTS 3 AND 4

The SBA acted arbitrarily and capriciously when it excluded debtors in bankruptcy from participation in the PPP. Because the SBA had acted arbitrarily and

---

[3] https://www.politico.com/news/2023/05/01/supreme-court-chevron-doctrine-climate-change-00094670#:~:text=The%20high%20court%20announced%20Monday,congressional%20statutes%20and%20judges%20should;

capriciously, the bankruptcy question on the PPP application was an illegal question which Defendant cannot be convicted of falsely answering.

> The SBA's decision to exclude debtors in bankruptcy was arbitrary and capricious.
>
> While a borrower's bankruptcy status clearly is relevant for a normal loan program, the PPP is the opposite of that. It is not a loan program at all. It is a grant or support program. The statute's eligibility requirements do not include creditworthiness. Quite the contrary, the CARES Act makes PPP money available regardless of financial distress. Financial distress is presumed. Given the effect of the lockdown, many, perhaps most, applicants would not be able to repay their PPP loans. They don't have to, because the "loans" are really grants. Repayment is not a significant part of the program. That is why Congress did not include creditworthiness as a requirement.

*In Re: Roman Catholic Church of the Archdiocese of Santa Fe*, 615 B.R. at 653. "The unmistakable implication is that Congress did not intend to exclude bankruptcy debtors from the PPP." *Id*. at 654.

In *U.S. Small Business Administration*, the magistrate judge reversed the bankruptcy court and held that the bankruptcy bar was not arbitrary or capricious. The court upheld the SBA's reasoning that "providing PPP loans to debtors in bankruptcy would present an unacceptably high risk of an unauthorized use of funds or nonrepayment of unforgiven loans. Fourth Rule, 85 Fed. Reg. at 23,451." *U.S. Small Business Administration*, 632 B.R. at 841.

The reasoning of the bankruptcy court, as opposed to the district court, was correct. First, the use of PPP funds by a debtor in bankruptcy clearly creates less risk of improper use of funds. A debtor in a Chapter 11 bankruptcy organization is obligated to file a Monthly Operating Report with the court and the bankruptcy trustee. The Monthly Operating Report is made available to all creditors for review. It would be very evident

to both the bankruptcy court and all creditors how PPP funds were being spent. If funds were being spent improperly, any creditor could ask the bankruptcy court to take action against the debtor. In a business not in bankruptcy reorganization, there is no oversight on how funds are being spent.

Second, the use of PPP funds by a debtor in bankruptcy presents less risk of repayment of an unforgiven loan. If the PPP loan is not forgiven, the bankruptcy court can order the debtor to repay the loan.

The SBA's course of conduct demonstrates that it acted arbitrarily and capriciously. The PPP application asks if the business or any owner are presently involved in a bankruptcy. The interim final rule published April 28, 2020 stated as follows: "Will I be approved for a PPP loan if my business is in bankruptcy? No. If the applicant or the owner of the applicant is the debtor in a bankruptcy proceeding, either at the time it submits the application or at any time before the loan is disbursed, the applicant is ineligible to receive a PPP loan." 85 Fed. Reg. 23450, 23451. On April 6, 2021, the SBA issued additional guidance in FAQ 67 by stating three conditions that don't constitute involvement in a bankruptcy. The first condition clarified that the owner in bankruptcy must be at least a 20% owner. The second condition included a Chapter 11 reorganization where the plan of reorganization had been confirmed. The third condition included a case where the court had entered an order dismissing the bankruptcy case.

While the SBA acts as though FAQ 67 was a simple clarification, it was in fact a significant policy shift. Excluding any business with an owner in bankruptcy is significantly different than excluding any business with a 20% or more owner in

bankruptcy. Defendant was a 33% owner of most of the Iowa Riley Drive restaurants. If Defendant instead had owned 19%, five Riley Drive restaurants could have received hundreds of thousands of dollars of PPP funds saving 100s of jobs. No rationale was provided for this policy shift. The SBA was simply pulling percentages out of thin air. This is not what Congress intended.

Saints Lenexa had been in bankruptcy for four months and Ignite had been in bankruptcy for two months. Both debtors were working on plans for reorganization. In fact, at the final bankruptcy court hearing for Ignite, Judge Somers stated the situation was unfortunate because he believed Ignite could have been successfully reorganized. If this FAQ 67 clarification had been set forth in the initial rule, there is a good chance Defendant could have quickly had plans for reorganization submitted and approved. The major policy shift to no longer exclude debtors with approved plans for reorganization again shows that the SBA was acting arbitrarily and capriciously with respect to the bankruptcy rules.

The FAQ 67 clarification that a debtor was not considered to be in bankruptcy if the bankruptcy court had entered an order dismissing the case was also major policy shift. If the interim final rule adopted by the SBA had contained this "clarification," Defendant could have quickly filed to have the Saints Lenexa, Ignite and his personal bankruptcies dismissed. Defendant could have then obtained PPP loans for both Saints Lenexa and Ignite and then could have refiled the bankruptcies later if necessary. In fact, stories abound of companies that filed bankruptcy shortly after receiving PPP funds. This

clarification was again a major policy shift that demonstrates the SBA was arbitrary and capriciously making up the rules as it went along.

The SBA's course of conduct with respect to forgiveness of PPP loans demonstrates the SBA acted arbitrarily and capriciously. The Riley Drive organization obtained the PPP loans previously described as the Tonic Loan, the Beaverdale Loan and the Waukee Loan. The SBA requested supplemental detailed information on each loan. The Beaverdale Loan and the Waukee Loan were forgiven by the SBA. The Tonic Loan was not forgiven. Defendant was a 33.33% owner of the entities that obtained the Beaverdale Loan and the Waukee Loan. Defendant was a 50% owner of the entity that obtained the Tonic Loan. The only possible rationale for forgiving the Beaverdale Loan and the Waukee Loan, but not the Tonic Loan, is that the SBA decided Defendant's ownership of 33.33% was acceptable, but 50% was too much. This conclusion doesn't even follow the rule set forth in FAQ 67 requiring less than 20% ownership. The failure of the SBA to even follow its own guidelines again shows that the SBA has acted arbitrarily and capriciously with respect to the rules excluding debtors in bankruptcy from the PPP program.

## IX.     SBA VIOLATED 11 U.S.C. § 525(A) WHICH REQUIRES DISMISSAL OF THE (A) STATEMENT IN COUNTS 3 AND 4

Denial of PPP loans on the basis of the applicant's bankruptcy status constitutes a violation of 11 U.S.C. § 525(a), which prohibits government agencies from making decisions regarding a "license, permit, charter, franchise, or other similar grant" solely based on an entity's status as a debtor under Title 11. Because the SBA violated 11 U.S.C. § 525(a) when it excluded debtors in bankruptcy, the bankruptcy question on the PPP

application was an illegal question which Defendant cannot be convicted of falsely answering.

Courts have disagreed on whether a PPP loan constitutes a grant within the meaning of § 525(a). *In re: Springfield Hospital, Inc. v. Carranza*, 618 B.R. 70 (D. Vermont 2020), has been recognized as having some of the best arguments in support holding the denial of bankruptcy debtors from participation in the PPP program violated § 525(a). In this case, the court defined a grant as "an agreement that creates a right of any description other than the one held by the grantor." *Id.* at 86 (*quoting Stoltz v. Brattleboro Hous. Auth.*, 315 F.3d 80, 89 (2nd. Cir. 2002)). In describing the PPP program, the court concluded that it isn't a loan program, it is a support program. *Id.* at 90. *See also Skefos v. Carranza*, No. 19-29718, 2020 Bankr. LEXIS 1479 (Bankr. W.D. Tenn. June 2, 2020)(emphasizing the unique nature of the PPP to meet an unprecedented crisis).

Defendant asks this Court to do what Defendant believes no other court has done – look at the rate of forgiveness to determine whether the PPP program is a loan program or grant program. In determining whether the PPP is a loan or a grant, no case has examined the rate of forgiveness of "loans." The rate of forgiveness of PPP loans bolsters the argument that PPP loans were in fact grants, not loans.

> An NPR analysis of data released on Jan. 8 [2023] by the Small Business Administration found that 92% of the loans issued have been granted full or partial forgiveness. That includes loans to companies with mega-rich owners. "The PPP program seems to have resulted in billions of dollars of fraudulent loans that have ultimately turned into grants," says Samuel Kruger, an assistant professor of finance at the University of Texas at Austin …[4]

---

[4] https://www.npr.org/2023/01/09/1145040599/ppp-loan-forgiveness

Courts that have found the bankruptcy debtor exclusion did not violate §525(a) have given the SBA the discretion to call the program a loan program and not a grant program. However, the rate of forgiveness proves otherwise. In reality, the PPP was not a loan program where some loans were forgiven. The PPP was a grant program where a handful of grants were required to be repaid.

There is an inherent danger in allowing a governmental agency to call something by a name other than its true name. What if the SBA called a four-legged animal that barks a cat? Does *Chevron* discretion require a court to defer to the SBA's determination? While *Chevron* allows for a reasonable amount of discretion, a program where 92% of the recipients of funds are not required to repay the funds is, without a doubt, a grant program.

## X.      SUMMARY

Defendant respectfully requests that this Court dismiss the (A) and (B) Statements of Counts 3 and 4 of the indictment for vagueness, and strike that language as surplusage. Defendant alternatively respectfully requests that the (A) Statement of Counts 3 and 4 of the indictment be dismissed because the SBA exceeded its statutory authority, acted arbitrarily and capriciously, and violated 11 U.S.C. § 525(a) when it excluded debtors in bankruptcy from participating in the Paycheck Protection Program.

The government alleges that Defendant acted dishonestly in making application for PPP funds. The facts demonstrate the complete opposite. The two entities in

bankruptcy were being supervised by the bankruptcy court. Defendant set aside the PPP funds, notified the court and all creditors that it had received the funds, and then asked the bankruptcy court for permission to use the funds. None of Defendant's actions were concealed, and in fact Defendant made all of his actions public in an article published by the *Kansas City Business Journal*.

Defendant did his best under extraordinary circumstances to contest in open court what he believed was an unfair and illegal implementation of the PPP program by the SBA. The government now seeks to prosecute Defendant for his reasonable actions. Defendant respectfully requests this Court to dismiss the (A) and (B) Statements of Counts 3 and 4 of the indictment.

Respectfully submitted,

         */s/ Robin D. Fowler*
Robin D. Fowler          #11752
**BATH & EDMONDS, P.A.**
4000 W 114th Street, Suite 210
Leawood, KS 66211
(913) 652-9800; FAX (913) 213-1849
E-mail: robin@bathedmonds.com
Attorney for Scott Anderson

## CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send notice of electronic filing to all parties of record herein.

         */s/ Robin D. Fowler*

Robin D. Fowler          #11752