# UNITED STATES DISTRICT COURT
## District of Kansas
(Kansas City Docket)

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

        v.                                    CASE NO. 23-20012-HLT

**SCOTT W. ANDERSON,**

        **Defendant.**

# SECOND SUPERSEDING INDICTMENT

**THE GRAND JURY CHARGES**:

At all times relevant to the Superseding Indictment:

## BACKGROUND

1. The United States Small Business Administration ("SBA") was an executive-branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters. As part of this effort,

1

the SBA enabled and provided for loans through banks, credit unions, and other lenders. These loans have government-backed guarantees.

2. Oakstar Bank was a financial institution, the deposits of which were insured by the Federal Deposit Insurance Corporation. Among other things, Oakstar Bank provided loans to applicants who satisfied certain qualifications.

3. Landmark National Bank was a financial institution, the deposits of which were insured by the Federal Deposit Insurance Corporation. Among other things, Landmark National Bank provided loans to applicants who satisfied certain qualifications.

4. Academy Bank was a financial institution, the deposits of which were insured by the Federal Deposit Insurance Corporation. Among other things, Academy Bank provided loans to applicants who satisfied certain qualifications.

5. SBA authorized Oakstar Bank, Landmark National Bank, and Academy Bank to act as a lender for SBA backed loans.

6. Itria Ventures LLC ("Itria") was a Delaware limited liability company. Among other things, Itria provided funding to businesses through "Future Receivables Sale Agreements."

7. Defendant Scott W. Anderson (Anderson) was a resident of Kansas. Anderson was involved with and controlled numerous Corporations and Limited Liability Companies (LLCs). Anderson, along with others known and unknown, operated restaurants in Kansas and Iowa through the entities. These entities included variations of the name "Riley Drive" and also RD Group.

8. An individual with the initials M.M., whose identity is known to the Grand Jury,

was a resident of Iowa, and a business partner of Anderson.

9.  An individual with the initials J.J.R., whose identity is known to the Grand Jury, was a resident of Iowa and business partner of Anderson.

### THE SMALL BUSINESS ADMINISTRATION LOANS

*The March 2018 SBA Loan*

10.  In and around February 2018, Anderson applied for an SBA Loan through Oakstar Bank. The loan was for Riley Drive Inc, a corporation controlled by Anderson.

11.  Prior to and during the time Anderson was submitting the loan application, Anderson and companies controlled by Anderson were defendants in civil lawsuits.

12.  As part of the SBA loan application, Anderson was asked to answer the question, "Are you, or any business you control, presently involved in any legal action (including divorce)?"

13.  Anderson falsely answered the question by checking the box corresponding with the answer "No." Anderson signed the loan application on or about February 15, 2018. At the time Anderson knew his answer was false.

14.  The SBA loan was approved in March 2018. The amount of the loan was $3,600,000. Riley Drive Inc. defaulted on the loan on June 1, 2019, causing a loss to SBA of at least $2,173,766.59.

*The April 2019 SBA Loan*

15.  In an around March 2019, Anderson applied for another SBA Loan through Landmark National Bank. The loan was for Riley Drive, Entertainment, XIX, which was an entity controlled by Anderson.

16. Prior to and during the time Anderson was submitting the loan application submitting the loan application, Anderson and companies controlled by Anderson were defendants in civil lawsuits.

17. As part of the SBA loan application, Anderson was asked to answer the question, "Are you, or any business you control, presently involved in any legal action (including divorce)?"

18. Anderson falsely answered the question by checking the box corresponding with the answer "No." Anderson signed the loan application on or about April 22, 2019. At the time Anderson knew his answer was false.

19. The SBA loan was approved on or about April 29, 2019. The loan was in the amount of $700,000. Riley Drive Entertainment XIX, LLC defaulted on the loan in June 2019, causing a loss of $658,141.45.

## COUNT 1

**False Statement in a Loan Application**
**[18 U.S.C. § 1014]**

On or about February 15, 2018, in the District of Kansas, the defendant,

**SCOTT W. ANDERSON,**

knowingly made a false statement for the purpose of influencing the action of Oakstar Bank, a financial institution whose accounts are insured by the Federal Deposit Insurance Corporation, in connection with an application and loan, in that the defendant falsely stated that neither he nor any business he controlled was involved in any legal action, when as the defendant well knew, he and at least one of his businesses were involved in a

4

legal action at the time.

In violation of Title 18, United States Code, Section 1014.

# COUNT 2

### False Statement in a Loan Application
### [18 U.S.C. § 1014]

On or about April 22, 2019, in the District of Kansas, the defendant,

**SCOTT W. ANDERSON,**

knowingly made a false statement for the purpose of influencing the action of Landmark Bank, a financial institution whose accounts are insured by the Federal Deposit Insurance Corporation, in connection with an application and loan, in that the defendant falsely stated that neither he nor any business he controlled was involved in any legal action, when as the defendant well knew, at least one of his businesses was involved in a legal action at the time.

In violation of Title 18, United States Code, Section 1014.

## THE PAYCHECK PROTECTION PROGRAM LOANS

20. Paragraphs 1 through 19 are reincorporated and alleged herein.

21. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in March 2020, and, among other things, was designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job

5

retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").

22. To obtain a PPP loan, a qualifying business was required to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business, through its authorized representative, to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the small business was required to state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation showing their payroll expenses.

23. When a PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which were guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

24. PPP loan proceeds were required to be used for certain permissible expenses, including payroll costs, mortgage interest, rent, and utilities. Under the applicable PPP rules and guidance, the interest and principal on the PPP loan was eligible for forgiveness

if the business spent the loan proceeds on these expense items within a designated period of time and used a certain portion of the loan towards payroll expenses.

### *The Riley Drive Entertainment XIX, LLC PPP Loan Application*

25. On or about April 10, 2020, Anderson applied for a PPP loan through Riley Drive Entertainment XIX, LLC, which was a company he controlled. One of the questions in the PPP loan application asked, "Is the applicant or any owner of the Applicant presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency, or presently involved in any bankruptcy?" Anderson falsely marked the box that answered "No."

26. Another question in the PPP application asked, "Has the Applicant, or any owner of the Applicant, or any business owned or controlled by any of them, ever obtained a direct or guaranteed loan from SBA or any other Federal agency that is currently delinquent or has defaulted in the last 7 years and caused a loss to the government?" Anderson falsely marked the box that answered "No." Anderson knew this was a false statement, because by the time he marked the box, Riley Drive, Inc. had defaulted on the SBA guaranteed loan.

27. Another question in the PPP loan application asked, "Is the Applicant or any owner of the Applicant an owner of any other business or have common management with any other business? If yes, attach a listing of all Affiliates and describe the relationship as addendum A." Anderson falsely marked the box that answered "No" to this question. Anderson knew this was a false statement because he was an owner of

numerous other businesses.

28.  Anderson failed to disclose he had filed a personal bankruptcy petition prior to submitting the loan application.  He further failed to disclose that two entities he controlled, Riley Drive Entertainment XV, Inc. and Riley Drive Entertainment XIX LLC had filed bankruptcy petitions as well.

### *The RD Group Management Inc. PPP Loan Application*

29.  On or about April 10, 2020, Anderson applied for a PPP loan through RD Group Management Inc., which was a company he controlled.  One of the questions in the PPP loan application asked, "Is the applicant or any owner of the Applicant presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency, or presently involved in any bankruptcy?"  Anderson falsely marked the box that answered "No."

30.  Another question in the PPP application asked, "Has the Applicant, or any owner of the Applicant, or any business owned or controlled by any of them, ever obtained a direct or guaranteed loan from SBA or any other Federal agency that is currently delinquent or has defaulted in the last 7 years and caused a loss to the government?"  Anderson falsely marked the box that answered "No."  Anderson knew this was a false statement, because by the time he marked the box, Riley Drive, Inc. had defaulted on the SBA guaranteed loan.

31.  Another question in the PPP loan application asked, "Is the Applicant or any owner of the Applicant an owner of any other business or have common management with any other business?  If yes, attach a listing of all Affiliates and describe the

8

relationship as addendum A." Anderson falsely marked the box that answered "No" to this question. Anderson knew this was a false statement because he was an owner of numerous other businesses.

32. Anderson failed to disclose he had filed a personal bankruptcy petition prior to submitting the loan application. He further failed to disclose that two entities he controlled, Riley Drive Entertainment XV, Inc. and Riley Drive Entertainment XIX LLC had both filed bankruptcy petitions.

### *The Riley Drive Entertainment XV, Inc. PPP Loan Application*

33. On or about April 30, 2020, Anderson applied for a PPP loan through Riley Drive Entertainment XV, Inc., which was a company he controlled. One of the questions in the PPP loan application asked, "Is the applicant or any owner of the Applicant presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency, or presently involved in any bankruptcy?" Anderson falsely marked the box that answered "No." At the time he signed the loan application, Anderson knew that Riley Drive Entertainment XV, Inc. was in bankruptcy proceedings.

34. Another question in the PPP application asked, "Has the Applicant, or any owner of the Applicant, or any business owned or controlled by any of them, ever obtained a direct or guaranteed loan from SBA or any other Federal agency that is currently delinquent or has defaulted in the last 7 years and caused a loss to the government?" Anderson falsely marked the box that answered "No." Anderson knew this was a false statement, because by the time he marked the box, Riley Drive, Inc. had

9

defaulted on the SBA guaranteed loan.

35. Another question in the PPP loan application asked, "Is the Applicant or any owner of the Applicant an owner of any other business or have common management with any other business? If yes, attach a listing of all Affiliates and describe the relationship as addendum A." Anderson falsely marked the box that answered "No" to this question. Anderson knew this was a false statement because he was an owner of numerous other businesses.

36. Anderson failed to disclose he had filed a personal bankruptcy petition prior to submitting the loan application. He further failed to disclose that two entities he controlled, Riley Drive Entertainment XV, Inc. and Riley Drive Entertainment XIX LLC., had also filed bankruptcy petitions.

## COUNT 3

**False Statement in a Loan Application**
**[18 U.S.C. § 1014]**

On or about April 10, 2020, in the District of Kansas, the defendant,

**SCOTT W. ANDERSON,**

knowingly made a false statement for the purpose of influencing the action of Academy Bank, a financial institution whose accounts are insured by the Federal Deposit Insurance Corporation, in connection with an application and loan, in that Anderson falsely stated that neither he nor any business he controlled was presently involved in any bankruptcy, that neither Anderson nor any business he controlled was currently delinquent on a direct or guaranteed loan from SBA, that neither Anderson nor or any business he controlled

had defaulted on a direct or guaranteed loan from SBA within the preceding seven years that caused a loss to the government, and that Anderson and RD Group Management Inc. did not have common management with any other business, all of which Anderson well knew to be false at the time.

In violation of Title 18, United States Code, Section 1014.

## COUNT 4

### False Statement in a Loan Application
### [18 U.S.C. § 1014]

On or about April 10, 2020, in the District of Kansas, the defendant,

**SCOTT W. ANDERSON,**

knowingly made a false statement for the purpose of influencing the action of Academy Bank, a financial institution whose accounts are insured by the Federal Deposit Insurance Corporation, in connection with an application and loan, in that Anderson falsely stated that neither he nor any business he controlled was presently involved in any bankruptcy, that neither Anderson nor any business he controlled was currently delinquent on a direct or guaranteed loan from SBA, that neither Anderson nor or any business he controlled had defaulted on a direct or guaranteed loan from SBA within the preceding seven years that caused a loss to the government, and that Anderson and Riley Drive Entertainment XIX, LLC did not have common management with any other business, all of which Anderson well knew to be false at the time.

In violation of Title 18, United States Code, Section 1014.

**THE ITRIA WIRE FRAUD SCHEME**

11

37. Paragraphs 1 through 36 are incorporated and realleged herein.

38. Beginning as early as July 2015, Anderson and companies he controlled, applied for future receivables sale agreement with Itria. As part of the future receivables sale agreement process, Anderson forged the names of M.M. and J.J.R., whose identities are known to the Grand Jury, on the future receivables sale agreements without their knowledge.

39. Itria required the individuals who applied for and signed the future receivables sale agreement to participate in a phone call with Itria employees. During the phone call, which was recorded, Itria employees confirmed the amount and terms of the future receivables sale agreement with the individuals purporting to be M.M. During the phone calls, Anderson had other employees pretend to be M.M. and on at least one occasion, J.J.R. These employees pretended to be M.M. and J.J.R., provided identifying information for M.M. and J.J.R., and acknowledged the terms of the Itria transactions. Neither M.M. nor J.J.R. knew Anderson had instructed the employees to portray them in the phone calls and they never authorized such conduct.

40. On or about December 7, 2018, Anderson sent an email to two employees of Anderson controlled companies. The email contained personal identifying information of M.M. and J.J.R., including their names, dates of birth, and the last four numbers of their Social Security numbers. Anderson sent that information so that the employees could pretend to be M.M. and J.J.R. during a subsequent phone call with Itria.

41. Itria paid funds pursuant to the future receivables sale agreement by a wire transfer from its bank account in New York to bank accounts of the Anderson entities in

Kansas.

## COUNTS 5 THROUGH 8

**Wire Fraud**
**[18 U.S.C. § 1343]**

42. Paragraphs one through 41 are reincorporated and set forth herein. Beginning from on or about July 21, 2015, and continuing until at least December 6, 2018, both dates being approximate and inclusive, in the District of Kansas and elsewhere, the defendant,

**SCOTT W. ANDERSON,**

knowingly devised and intended to devise a scheme to defraud Itria and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises. For the purpose of executing the scheme described above, Anderson caused to be transmitted by means of wire communication in interstate commerce the signals described below for each count, each transmission constituting a separate count:

| Count | Approximate Date | Description |
|---|---|---|
| 5 | March 29, 2018 | Wire transmission of $132,025.03 from Itria's bank account outside Kansas to Anderson's bank account in Kansas. |
| 6 | July 27, 2018 | Wire transmission of $244,500.00 from Itria's bank account outside Kansas to Anderson's bank account in Kansas. |
| 7 | September 21, 2018 | Wire transmission of $146,500.00 from Itria's bank account outside Kansas to Anderson's bank account in Kansas. |
| 8 | March 20, 2019 | Wire transmission of $58,812.50 from Itria's bank account outside Kansas to Anderson's bank account in Kansas. |

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT 9

**Aggravated Identity Theft**
**[18 U.S.C. § 1028A]**

On or about December 7, 2018, in the District of Kansas and elsewhere, the defendant,

**SCOTT W. ANDERSON,**

knowingly transferred, possessed, and used, without lawful authority, a means of identification of another person, that is M.M., whose identity is known to the Grand Jury, during and in relation to a felony enumerated in 18 U.S.C. § 1028A(c), that is wire fraud, knowing the means of identification belonged to another actual person.

In violation of Title 18, United States Code, Section 1028A.

## COUNT 10

**Aggravated Identity Theft**
**[18 U.S.C. § 1028A]**

On or about December 7, 2018, in the District of Kansas and elsewhere, the defendant,

**SCOTT W. ANDERSON,**

knowingly transferred, possessed, and used, without lawful authority, a means of identification of another person, that is J.J.R., whose identity is known to the Grand Jury, during and in relation to a felony enumerated in 18 U.S.C. § 1028A(c), that is wire fraud, knowing the means of identification belonged to another actual person.

In violation of Title 18, United States Code, Section 1028A.

## COUNTS 11 THROUGH 14

**Aggravated Identity Theft**
**[18 U.S.C. § 1028A]**

On or about the dates set forth below, in the District of Kansas and elsewhere, the defendant,

**SCOTT W. ANDERSON,**

knowingly transferred, possessed, and used, without lawful authority, a means of identification of another person during and in relation to a felony enumerated in 18 U.S.C. § 1028A(c), that is wire fraud, knowing the means of identification belonged to another actual person, as set forth below.

| Count | Approx. Date | Related Wire Fraud Count | Person |
|---|---|---|---|
| 11 | March 28, 2018 | Count 5 | M.M. |
| 12 | July 26, 2018 | Count 6 | M.M. |
| 13 | September 20, 2018 | Count 7 | M.M. |
| 14 | March 20, 2019 | Count 8 | M.M. |

In violation of Title 18, United States Code, Sections 1028A(a)(1) and 2.

## FORFEITURE NOTICE

43. The allegations contained in paragraphs 1-42 and Counts 1-14 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 982(a)(2), Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461.

44. Upon conviction of one or more of the offenses set forth in Counts 1-4 of this Indictment, the defendant shall forfeit to the United States of America, pursuant to

Title 18, United States Code, Section 982(a)(2), any property, constituting or derived from proceeds obtained directly or indirectly as a result of the offenses. The property to be forfeited includes, but is not limited to, the following:

  A. A forfeiture money judgment against the defendant in an amount equal to the amount of gross proceeds obtained or derived by him from the commission of Counts 1-4.

45. Upon conviction of one or more of the offenses set forth in Counts 5-8 of this Indictment, the defendant shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses. The property to be forfeited includes, but is not limited to, the following:

  A. A forfeiture money judgment against the defendant in an amount equal to the amount of gross proceeds obtained or derived by him from the commission of Counts 5-8.

If any of the property described above, as a result of any act or omission of the defendant:

  A. cannot be located upon the exercise of due diligence;

  B. has been transferred or sold to, or deposited with, a third party;

  C. has been placed beyond the jurisdiction of the court;

  D. has been substantially diminished in value; or

  E. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant

to Title 21, United States Code, Section 853(p).

                A TRUE BILL.


October 9, 2024          s/ Foreperson
                  FOREPERSON OF THE GRAND JURY


KATE E. BRUBACHER
United States Attorney
District of Kansas

By: /s/ D. Christopher Oakley
Assistant United States Attorney
District of Kansas
500 State Avenue, Suite 360
Kansas City, Kansas  66101
Ph: (913) 551-6730
Fax: (913) 551-6541
Email: chris.oakley@usdoj.gov
Ks. S. Ct. No. 19248


> IT IS REQUESTED THAT THE TRIAL BE HELD IN KANSAS CITY, KANSAS

# PENALTIES

### Counts One through Four [False statement in connection with a loan application]

- Punishable by a term of imprisonment of not more than thirty (30) years.  18 U.S.C. § 1014

- A term of supervised release of not more than five (5) years.  18 U.S.C. § 3583(b)(2).

- A fine not to exceed $1,000,000.  18 U.S.C. § 1014.

- A mandatory special assessment of $100.00.  18 U.S.C. § 3013(a)(2)(A).

### Counts Five through Eight [Wire Fraud]

- Punishable by a term of imprisonment of not more than twenty (20) years.  18 U.S.C. § 1343

- A term of supervised release of not more than five (3) years.  18 U.S.C. § 3583(b)(2).

- A fine not to exceed $250,000.  18 U.S.C. § 3571(b)(3).  In the alternative, the defendant may be fined not more than the greater of twice the gross gain or twice the gross loss.  18 U.S.C. § 3571(d).

- A mandatory special assessment of $100.00.  18 U.S.C. § 3013(a)(2)(A).

### Counts Nine through Fourteen [Aggravated Identity Theft]

- Punishable by a term of imprisonment of two years.  18 U.S.C. § 1028A

- A term of supervised release of not more than one (1) year.  18 U.S.C. § 3583(b)(2).

- A fine not to exceed $250,000.  18 U.S.C. § 1014.

- A mandatory special assessment of $100.00.  18 U.S.C. § 3013(a)(2)(A).