# UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS
### (Kansas City Docket)

**UNITED STATES OF AMERICA,**
**Plaintiff,**

**v.**                                   **Case No.  23-20012-HLT**

**SCOTT W. ANDERSON,**
**Defendant.**

# TRIAL BRIEF

The United States of America respectfully submits this memorandum to aid the Court should certain evidentiary issues arise at trial.

**RELEVANT FACTS**

**Counts One and Two – The Small Business Administration (SBA) Loans**

Defendant Scott Anderson was in the restaurant business in Kansas and Iowa. Defendant was an owner and controlled numerous corporations and limited liability companies, most of which utilized some variation of "Riley Drive" in their names, such as Riley Drive Inc.; Riley Drive Entertainment XIX, LLC; and RD Group.

Counts one and two each charge Defendant with making a false statement to a financial institution.  Both alleged false statements were in connection with SBA guaranteed loans.  Count one relates to a $3.6 million SBA loan with Oakstar Bank in

February 2018 and count two relates to a $700,000 SBA guaranteed loan with Landmark National Bank in April 2019.

On February 15, 2018, as part of the Oakstar Bank loan process, Anderson signed an SBA Form 1919, Borrower Information Form as a principal of the business.



(Gov. Ex. 2)

Question 25 of the form asked, "Are you or any business you control, presently involved in any legal action (including divorce)?" Defendant checked the box corresponding with "no."

| 24 | Have you, or any business you controlled, ever filed for bankruptcy protection? | ☐ | ☑ |
| 25 | Are you, or any business you control, presently involved in any legal action (including divorce)? | ☐ | ☑ |

The government alleges this was a false statement because on August 7, 2017, Defendant and Riley Drive Entertainment XIV, Inv were sued by 10 Quivira Plaza 14A, LLC in Johnson County District Court case 17LA05443. That case, which was converted to a civil action in Johnson County after Defendant, though counsel, filed a counterclaim. The case remained pending until March 6, 2020.

In March 2018, SBA approved the Oakstar loan in the amount of $3,600,000. Riley Drive Inc. defaulted on the loan on June 1, 2019, causing a loss of approximately $2,173.766.59 to SBA.

On April 22, 2019, Defendant applied for a second SBA loan, through Riley Drive Entertainment XIX, LLC, with Landmark Bank.  That loan also contained question 25, "Are you or any business you control, presently involved in any legal action (including divorce)?"  Defendant again checked the box corresponding with "no."

The government alleges this was a false statement because, at the time Defendant signed the April 22, 2019 SBA Form 1919 for the Landmark Loan, Johnson County case 17LA05443 remained pending, but there were four other lawsuits that had been filed and remained pending against either Defendant or entities he controlled, including: *Security Equipment, Inc. v. Riley Drive Entertainment IX et al,* (Johnson County Case 18LA10896): *Villotti v. Riley Drive In and Riley Drive Entertainment XVI, Inc*., (Dallas County, Iowa Case LACV041534); *Kansas Department of Revenue v. Riley Drive Entertainment XIX LLC*., (Johnson County Case 19TW00099); and *Botts v. Riley Drive Entertainment I, Inc*., (Polk County, Iowa, Case No. LACL 143369).

Landmark approved the $700,000 SBA guaranteed loan in April 2019. Riley Drive Entertainment XIX, LLC became delinquent on the loan, failing to make any payments after July 1, 2019. The Landmark loan was purchased by SBA as part of the guaranty in 2023, after the Payroll Protection Program (PPP) loans discussed below.

On October 29, 2019, which was after the SBA loans, but prior to the PPP loans, Riley Drive Entertainment XIX, LLC filed for bankruptcy. On March 5, 2020, Defendant

3

Anderson personally filed a voluntary petition for bankruptcy. Those petitions were pending when Defendant applied for the Payroll Protection Program loans discussed below.

### Counts Three and Four – The PPP Loans

On April 10, 2020, several months after Defendant defaulted on the Oakstar PPP loan and while he was delinquent on the Landmark SBA loan, and while his personal and business bankruptcies were pending, Defendant applied for two PPP loans, both through Landmark Bank. The first PPP loan was for Riley Drive Entertainment XIX, LLC. The second PPP loan was for RD Group Management Inc. Counts three and four relate to alleged false statements in these applications.

On April 30, 2020, Defendant filed a PPP loan application for Riley Drive Entertainment XV, Inc.  Paragraphs 33 – 36 of the Second Superseding Indictment discuss this loan application, but there is not a substantive count charged related to this application.

In all the PPP loan applications, Defendant Anderson signed as authorized representative.  The first question on each loan application asked if the applicant or any owner was involved in any bankruptcy; Defendant answered "No."

| | Question | Yes | No |
|---|---|---|---|
| 1. | Is the applicant or any owner of the Applicant presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency, or presently involved in any bankruptcy? | | X |
| 2. | Has the Applicant, or any owner of the Applicant, or any business owned or controlled by any of them, ever obtained a direct or guaranteed loan from SBA or any other Federal agency that is currently delinquent or has defaulted in the last 7 years and caused a loss to the government? | | X |
| 3. | Is the Applicant or any owner of the Applicant an owner of any other business or have common management with any other business? If yes, attach a listing of all Affiliates and describe the relationship as addendum A. | | X |

(Gov Ex. 50)

==If questions (1) or (2) below are answered "Yes," the loan will not be approved.==

| | Question | Yes | No |
|---|---|---|---|
| 1. | Is the applicant or any owner of the Applicant presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency, or presently involved in any bankruptcy? | | X |
| 2. | Has the Applicant, or any owner of the Applicant, or any business owned or controlled by any of them, ever obtained a direct or guaranteed loan from SBA or any other Federal agency that is currently delinquent or has defaulted in the last 7 years and caused a loss to the government? | | X |
| 3. | Is the Applicant or any owner of the Applicant an owner of any other business or have common management with any other business? If yes, attach a listing of all Affiliates and describe the relationship as addendum A. | | X |

(Gov. Ex. 45)

Question two of each application asked, "Has the Applicant, or any owner of the Applicant, or any business owned or controlled by any of them, ever obtained a direct or guaranteed loan from SBA or any other Federal agency that is currently delinquent or has defaulted in the last 7 years and caused a loss to the government.?"  On both questions, Defendant answered "No."

The application specified that if the bankruptcy question was answered in the affirmative, the loan would not be approved.  The Government expects that witnesses from both SBA and Landmark Bank will testify that Defendant's PPP applications would not have been approved if he would have answered "yes" to either question one or question two in the applications.

All three PPP loan applications were approved and were initially funded.  For instance, on April 10, 2020, Academy deposited $208,961.00 into Riley Drive Entertainment XIX's account as a "Loan Advance" for the Riley Drive XIX loan.

We have updated our Deposit Account Agreement effective April 1.  Please visit our website to download a copy or visit any banking center to obtain a printed copy.

**Account Activity**

| Transaction Date | Description | Debits | Credits | Balance |
|---|---|---|---|---|
| 04/03/2020 | Beginning Balance | | | $0.00 |
| 04/10/2020 | PPP LOAN ADVANCE | | $208,961.00 | $208,961.00 |
| 04/30/2020 | Ending Balance | | | $208,961.00 |

**SIMPLE BUSINESS 14- XXXXXXXXXXXXXX06**

**Daily Balances**

(Gov. Ex. 100)

On May 13, 2020, after the Riley Drive XIX loan advance had been funded, Defendant Anderson provided Academy Bank with a PPP loan application with "amended" handwritten on the form. Defendant marked through "or presently involved in any bankruptcy?" for question one and underlined "and" on question two, which asked whether the applicant was "currently delinquent or has defaulted in the last 7 years and caused a loss to the government?"

| Paycheck Protection Program Application Form | | | GOVERNMENT EXHIBIT 52 23-CR-20012-HLT | Amended | | |
|---|---|---|---|---|---|---|
| | | | | | OMB Control No.: 3245-0407 Expiration Date: 09/30/2020 | |
| **Business Structure:** | scorp | | | | | |
| **Business Legal Name** | | | | **DBA or Tradename if applicable** | | |
| Riley Drive Entertainment XIX, LLC | | | | Ignite Wood Fire Grill | | |
| **Business Primary Address** | | | | **Business TIN (EIN,SSN)** | | **Business Phone** |
| 8721 Ryckert | | | | 81-2089451 | | (913) 538-7556 |
| Lenexa, KS 66219 | | | | **Primary Contact** | | **Email Address** |
| | | | | Scott Anderson | | sanderson@rileydrive.com |
| Average Monthly Payroll: | $ 85135 | X 2.5 equals Loan Amount: | $ 212837.5 | Number of Employees: | | 62 |
| Purpose of the loan: | payroll, rent_mortgage, utilities | | | | | |
| Academy or AFB Customer: | Yes | | Preferred banker: | | Jacob Nemechek | |

*If questions (1) or (2) below are answered "Yes," the loan will not be approved.*

| | Question | Yes | No |
|---|---|---|---|
| 1. | Is the applicant or any owner of the Applicant presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency, or presently involved in any bankruptcy? | | X |
| 2. | Has the Applicant, or any owner of the Applicant, or any business owned or controlled by any of them, ever obtained a direct or guaranteed loan from SBA or any other Federal agency that is currently delinquent or has defaulted in the last 7 years and caused a loss to the government? | | X |
| 3. | Is the Applicant or any owner of the Applicant an owner of any other business or have common management with any other business? If yes, attach a listing of all Affiliates and describe the relationship as addendum A. | | X |

Signature of Authorized Representative of Business    Date    5/13/20

Scott Anderson
Print Name

President
Title

(Gov. Ex. 52)

The government alleges a third false statement on the PPP loan applications. Question 3 of each application asked, "Is the Applicant or any owner of the Applicant an owner of any other business or have common management with any other business? If yes, attach a listing of all Affiliates and describe the relationship as addendum A." Defendant answered, "No" to this question on all the PPP applications. The government alleges this was a false statement because at the time Defendant had an ownership interest in multiple entities, including RD Group, Riley Drive Entertainment XV, and Riley Drive Entertainment XIX, among many others.

**Counts Five through Fourteen – The Itria Wire Fraud Scheme and Identity Thefts**

Counts five through eight each charge substantive wire fraud counts related to a scheme to defraud Itria. Count nine through fourteen each charge aggravated identity

7

theft for utilizing the means of identification of two other of Anderson's partners as part of the Itria wire fraud scheme.

Itria is a company that enters into financing agreements, which it calls "Future Receivable Sales Agreements." These agreements provide payment of cash in return for a future repayment of the case from future accounts receivables that includes payment above the initial sales amount. As part of this contractual agreement, Itria has both a written agreement which it requires to be signed and notarized by the contracting party and a recorded funding phone call in which it verifies the identity of the contracting party and goes over the terms of the written contract.

The government alleges that, as part of the scheme to defraud and obtain money through false statements, promises, and representations, Defendant forged MM and JR's names on forms and had other persons pretend to be MM and JR during several funding phone calls. The wire transmissions correspond with wire transfers sent from Itria's bank to Anderson's bank account in Kansas.

Each of the wire fraud counts have a corresponding aggravated identity theft count. For instance, count five relates to a March 29, 2018, wire transmission of $132,025.03 from Itria to Defendant's bank account in Kansas, and count eleven is the March 28, 2018, funding phone call in which Defendant used the identify of MM to obtain the Itria agreement.

The two additional aggravated identity theft counts, counts nine and ten, correspond to an email Defendant sent on December 7, 2018, with the subject, "print and hold" to two individuals, Brad Gilmore and Adam White. The email contained the name

of the two partners, along with their dates of birth and last four of their social security

numbers.

**From:** Scott Anderson <sanderson@rileydrive.com>
**Date:** Friday, December 7, 2018 at 10:59 AM
**To:** Brad Gilmore <bgilmore@rileydrive.com>, Adam White <awhite@rileydrive.com>
**Subject:** details - print and hold

Riley Drive Entertainment 19, LLC dba Ignite
8721 Ryckert, Lenexa

Marc Mundt

███████

Johnny Robb

███████

290,000 – payback 362,500

(Gov. Ex. 81)

The government anticipates that both Gilmore and White will testify that, after

receiving this email, they participated in an Itria funding call in which they portrayed

MM and JR.

**ANTICIPATED LEGAL ISSUES**

1. A*dmission of court cases, statutes, and CFRs or testimony by witnesses as to what
the law states would confuse the jury and invade the province of the Court.*

Defendant's exhibit list (doc. 45, filed 10/9/24) includes several legal documents,

including: a printed copy of 13 CFR 121.301 (Def. Ex. 1068); copies of two portions of

the Federal Register (Def. Ex. 1069 and 1115); text of the CARES Act (Def. Ex. 1101);

the 1997 North American Industry Classification System (Def. Ex. 1102); copy of the

opinion of various judicial opinions including *Hidalgo v. SBA* and others (Def. Exs. 1112,

9

1119, 1120,  and 1121); and a  Kansas Legislative Post Audit Report (Def. Ex. 1144).
These documents are either completely irrelevant, or any miniscule relevancy is
subsumed by the likelihood that the evidence will be misleading or confusing to the jury.

Similarly, both sides have identified attorneys as witnesses, and attorneys are able
testify as any other lay witness.  However, no witness, including attorneys, should be
allowed to offer testimony as to the witnesses' opinion of the law or to otherwise provide
legal instruction to the jury.

*United States v. Willie*, 941 F.2d 1384 (10th Cir. 1991) is illustrative. Willie,
convicted of failing to file income tax returns, argued on appeal that the trial court erred
when it refused to allow Willie to introduce exhibits including the Constitution, a History
of Congress dated 1792, pages of session laws, a Navajo Treaty, the Coinage Act of
1965, and letters from Willie to the Departments of Justice and Treasury.  Willie alleged
those documents were admissible to show the basis for his belief that he was not required
to file tax returns.

Since Willie was charged with failure to file income tax returns, the government
was required to prove that Willie's conduct was willful.  The Tenth Circuit recognized
evidence of Willie's good faith belief that he did not have to file was relevant, given the
willfulness element.  Nevertheless, the Tenth Circuit held the evidence was properly
excluded.  "[A] defendants' good faith belief that he has no legal obligation to file and
evidence showing the reasonableness of that state of mind is relevant. But, proof of the
reasonableness of a belief that he should not have a duty only proves the reasonableness
of the defendant's disagreement with the existing law and is, therefore, properly excluded

10

as irrelevant."  941 F.2d at 1392.

Defendant seems to want to admit his exhibits for a similar purpose – to argue his good faith belief that SBA exceeded its statutory authority when it precluded debtors in bankruptcy from obtaining PPP loans.  Here, the irrelevancy and potential confusion factors are even greater than *Willie*.  Unlike the charges in *Willie*, willfulness is not an element of the § 1014 charges which are the only counts related to the SBA's bankruptcy determination. As argued in the government's motion in *limine* (doc. 42, filed 10/7/24), the government must prove Defendant knowingly made a false statement with the intent to influence the financial institution.

The Tenth Circuit affirmed the trial court for multiple reasons, including that Willie failed to preserve the issue for appeal, but also found the documents were properly excluded as being unduly confusing to the jury under Fed. R. Evid. 403 because the "exhibits were confusing, because the danger of the jury's misuse of the evidence was great, and because the relevant point was provable by other evidence."  *Id*. at 1395.

As to the prohibition on attorneys offering testimony concerning the law -- "The law is given to the jury by the court and not introduced as evidence.  The law is the singular province of the judge.  Juries only decide facts, to which they apply the law given to them by the judge."  *Id.* at 1396 (10th Cir. 1991) (cleaned up).

### 2. *Evidence of non-Itria "short term loans" is irrelevant.*

Defendant has identified as exhibits numerous short-term loans from companies other than Itria, the charged victim of the wire fraud counts. Defendant's exhibit 1000 is a summary of numerous of these loans. Defense exhibits 1001-1042 appear to be loan

documents from these other companies.

It's unclear why Defendant wants to admit evidence of loans from companies other than Itria.  If it's to show that MM or JR agreed to other non-Itria loans, such evidence is irrelevant because "[e]vidence that a defendant acted lawfully on other occasions is generally inadmissible to prove he acted lawfully on the occasion alleged in the indictment.  *United States v. Reese*, 666 F.3d 1007, 1020 (7th Cir. 2012).

### 3. *Relevancy of bankruptcy pleadings and PPP loans of individuals other than Defendant*

Defendant has identified as exhibits bankruptcy petitions and dockets of other persons as exhibits (Def. Exs. 1237, 1238, 1278, and 1279). His personal bankruptcy and the bankruptcy of entities he controlled are relevant – counts three and four relate to his failure to disclose these bankruptcies. However, bankruptcy pleadings of Defendant's business partners are not relevant for any of the charges.

Evidence that another person committed the crime with which a defendant is charged is admissible when such evidence raises doubt about the defendant's own guilt. See *Holmes v. South Carolina*, 547 U.S. 319, 327 (2006).  But this argument is different than an argument that a witness <u>also</u> engaged in similar criminal conduct.  The possible guilt of another witness of similar crimes does not relevant to the determination of Defendant's guilt.

### 4. *Defendant's out of court statements, if offered by him, are inadmissible hearsay.*

Defendant has identified multiple out of court statements made by him, including emails and text messages (Def. Ex. 1138, 1139, 1170, 1172, 1182, 1191, 1177,

1205,1210, and 1218,); Defendant's calendar (Def. Ex. 1211); a news article in which he

was quoted (Def's Ex. 1124), and a transcript of a CNN interview in which Defendant

appeared (Def. Ex. 1300).

A statement made outside of the courtroom, if offered to prove the truth of the

matter asserted in the statement, is hearsay.  Fed. R. Evid. Rule 801.  Hearsay is not

admissible absent a rule providing otherwise.  Fed. R.Evid. Rule 802.  The Rules contain

both non-hearsay statements (Rule 801(d)), and exceptions to the hearsay rule (Rule 803.)

A statement made by an opposing party *when offered by the opposing party* is

classified as non-hearsay. Rule 801(d)(2).  Under the Rules, the government is allowed to

offer statements to prove the truth of the statement made by Defendant both personally,

or in a representative capacity.  However, Defendant's statements, if offered by him for

proof of the truth of the matter, are not admissible under Rule 802(d)(2). Unless he can

identify another hearsay exception, any exhibit that contains an out-of-court statement by

Defendant offered for the truth of the matter should be excluded as hearsay.

Respectfully submitted,

KATE E. BRUBACHER
United States Attorney

*/s/ D. Christopher Oakley*
D. CHRISTOPHER OAKLEY
Assistant United States Attorney
500 State Avenue, Suite 360
Kansas City, KS 66101
Ph. 913-551-6730
Fax 913-551-3541
Chris.Oakley@usdoj.gov
Ks S.Ct.No. 19248

13

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 28, 2024, the foregoing was electronically filed with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record in the above-captioned case.

*/s/ D. Christopher Oakley*
D. CHRISTOPHER OAKLEY
Assistant United States Attorney