UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No.: 23-CR-20012-HLT-ADM |
| SCOTT W. ANDERSON, | ) | |
| Defendant. | ) | |

**SENTENCING MEMORANDUM AND**
**REQUEST FOR DEPARTURE/VARIANCE**

**COMES NOW** Scott Anderson, by and through counsel Robin D. Fowler, and hereby files this Sentencing Memorandum which reflects a post-trial Sentencing Agreement with the United States, as well as a request for a departure/variance from the current guideline range to a recommended sentencing range of 120-months. In support of said memorandum, Mr. Anderson states:

**A.  BACKGROUND**

Mr. Anderson was charged by indictment on August 23, 2023, in a fourteen (14) count Indictment alleging four (4) counts of a false statement (Counts 1-4-18 U.S.C. 1014); four (4) counts of wire fraud (Counts 5-8-18 U.S.C. 1343): and six (6) counts (Counts 9-14-18 U.S.C. 1028A) of aggravated identity theft. A superseding Indictment was later filed with some minor changes, and after a jury trial Mr. Anderson was convicted of all counts on November 14, 2024.

Since his conviction a pre-sentence report (PSR) has been prepared in this case, and the guideline calculations are found in paragraphs 44-54 of the PSR. His total offense level is 33, and his criminal history category is zero (0). Mr. Anderson's

guideline range for all counts is 135 to 168 months in prison, while counts 9-14 are aggravated identity theft convictions requiring at least one consecutive sentence of 24 months.  The effective guideline range in this case is therefore 159-192 months.

The parties have since reached a post-trial sentencing agreement which contains several joint recommendations, all of them nonbinding, to the Court. The parties agree to jointly recommend a sentence of 96 months pursuant to the guidelines for Counts 1-8, 9, and 11-14 to run concurrently with each other, with a 24-month consecutive sentence on Count 10. This brings Mr. Anderson's total recommended range of imprisonment to 120 months. Further, the parties agreed upon the restitution as calculated in the PSR, with a total judgement of $3,778,695.39. As a part of this agreement Mr. Anderson dropped all objections his objections to the PSR, which included challenges to the guideline calculations as well as the amount of restitution, and he further agreed to drop his motion for a new trial and waive appeal.

Since the trial of this case, there have been several developments in Mr. Anderson's life. Because of the conviction he was forced to surrender his law license, ending his legal career.  His wife has filed for divorce, complicating Mr. Anderson's plans for making at least some restitution payments prior to sentencing. In addition, he suffered a massive heart attack on February 10, 2025. Mr. Anderson coded a number of times during his heart attack, with his heart having to be shocked over 10 times during a two-hour period to try to keep him alive. He is currently in cardio rehabilitation until mid-July, and has a continuing blockage in his heart, which will likely require a stent or another open-heart procedure at some point.  Mr. Anderson remains on a number of different cardiac medications at this time.

The issue for the Court at sentencing is what type of sentence is "sufficient, but not greater than necessary" to accomplish the purposes of sentencing found in 18 U.S.C. § 3553 for Mr. Anderson, a 53-year-old who until his conviction in this case had built a productive legal and business career. Since his conviction he has surrendered his law license, dropped all challenges to his conviction (including his motion for new trial and waiver of appeal), and dropped all objections to the PSR's calculation of both his guideline range and restitution. In light of Mr. Anderson's sentencing agreement with the government and his concessions regarding multiple issues involving that sentencing, the issue for this Court is whether 120 months is "sufficient" for a departure/variance from his effective guideline range (with a low end of 159 months) to 120 months. Mr. Anderson suggests that it is sufficient, and the government joins this request. We are hopeful the Court will follow the agreement, further argument follows below.

**B.    ARGUMENT AND AUTHORITIES**

The Supreme Court has firmly instructed that sentencing courts "may not presume that the Guidelines range is reasonable." *Gall v. United States,* 552 U.S. 38, 128 S.Ct. 586, 596 (2007) [citing *Rita v. United States,* 551 U.S. 338, 127 S.Ct. 2456 (2007)]. Rather, a sentencing court must make an "individualized assessment based on the facts presented." *Gall, 128* S.Ct. at 597. Most importantly, a court's final determination of a sentence must reflect "§3553(a)'s overarching instruction to 'impose a sentence sufficient, but not greater than necessary' to accomplish the sentencing goals advanced in 3553(a)(2)," namely - retribution, deterrence, incapacitation, and rehabilitation. See *Kimbrough v. United States,* 552 U.S. 85, 128 S.Ct. 558, 575 (2007).

In pertinent part, 18 U.S.C. 3553 states:

" **(a)  Factors to be considered in imposing a sentence. –**

The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider –

1) the nature and circumstances of the offense and the history and characteristics of the defendant;

2) the need for the sentence imposed –

    A. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    B. to afford adequate deterrence to criminal conduct;

    C. to protect the public from further crimes of the defendant; and

    D. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."

We will look at some of these factors below.

**The nature and circumstances of the offense and the history and characteristics of the defendant**

Mr. Anderson acknowledges that this is a serious offense. The non-binding guideline range in this case is 159-192 months, while the parties are jointly requesting a sentence of 120 months in prison. The question becomes what sentence is "sufficient, but not greater than necessary" to provide punishment appropriate for Mr. Anderson's offenses, and whether a sentence of 120 months is appropriate.

While the guidelines in this case call for a sentence higher than 120 months, which imply that factors such as "just punishment," deterrence and other factors call for a sentence greater than 120 months; several other factors, we believe, tip the scales toward a downward departure/variance to 120 months. For example, although not a part of his federal sentence, the convictions themselves caused Mr. Anderson to lose his license to practice law. Beyond the loss of his career, the personal and financial impact of this on both he and his family are devastating. The convictions also preclude him being able to have a liquor license, which affects his ability to engage in the bar/restaurant business, at least as an owner. Essentially then, the convictions have caused him to lose both career paths he has been on his entire adult life.

Since his conviction he also had a serious heart attack, which required his heart to be shocked multiple times in an effort to save his life. Mr. Anderson has a family history of heart problems. His biological mother died from a heart attack in her 50s. Mr. Anderson suffered a heart attack on February 10, 2025. Mr. Anderson was shocked 14 times over a two-hour period. He had 100% blockage in his right coronary artery, as well as significant blockage in his left anterior descending artery. Mr. Anderson received two stents but still has moderate blockage in his proximal left anterior descending artery that has not received treatment. The doctor was reluctant to treat this blockage at the time of his heart attack because of the severity of the heart attack and potential for complications due to the location of the blockage. This blockage needs to be monitored and will likely require a stent or open-heart procedure at an unknown time. Mr. Anderson is taking a number of different cardiac medications at this time, and he is currently in cardiac rehab until mid-July.

In considering what length of sentence is appropriate in this case, it seems clear that the heart attack certainly shortens Mr. Anderson's life expectancy. For example, an extensive look at survival rates among persons who have had one heart attack shows the statistical odds of survival during the following time periods: 1 month, 1, 2, 5 and 10 years.

> **Summary survival rates and causes of death**
>
> The pooled survival rates at 1 month, and 1, 2, 5, and 10 years, respectively, were 95.7% (95% confidence interval 94.3-96.9), 86.5% (85.4-87.6), 72% (67.0-76.6), 56.7% (54.0-59.4) and 34.9% (24.0-46.8) (*Figure 1;* online supplementary *Figures S2-S6)*. Only 19 studies reported data on cause of death, but in 14 of these a cardiovascular cause accounted for over 50% of the total deaths (*Table 2)*.[25, 26, 34, 45, 47, 50-53, 56, 60, 61, 63, 64, 67, 69, 72-72, 77] HF tended to be the most frequent cause of death but there was significant variation in the reported proportion of deaths related directly to HF, ranging from 8% to 64%.

*Survival of patients with chronic heart failure in the community: a systematic review of meta-analysis*. (Exhibit A) European Journal of Heart Failure (2019) 21, 1306-1325 doi:10.1002/ejhf.1594. Although Mr. Anderson's survival rate may be slightly better than the percentages above due to his relatively young age at the time of his first heart attack, and while individual results vary based on many factors, there is no question that Mr. Anderson's life expectancy is not what it was before his heart attack, and we would ask the Court to consider this in evaluating what a sufficient sentence in this case should be. USSG 5H1.4 states that "[A]n extraordinary physical impairment may be a reason to depart downward." While Mr. Anderson's medical situation may not be "extraordinary" under this departure provision, we would ask that the Court consider this as an appropriate basis for the variance sought in the parties' sentencing agreement.

**Personal Background**

Mr. Anderson lives in Lake Quivira, Kansas with his wife, and they have raised three children – a son (25) who just graduated from KU law school and has accepted a job with a Kansas City law firm, a daughter (20) who will be a senior at KU and plans to attend dental school. The youngest son (20) took a semester off from college to help his mother and is working at a local restaurant.

Mr. Anderson's mother, Geraldine Anderson, had lived in Westchester Village in Lenexa since Mr. Anderson's father passed away three years ago. Ms. Anderson suffered a stroke in February. Mr. Anderson moved his mother to Benton House in Lenexa after the stroke, and she is currently living in assisted living at Benton House. Mr. Anderson is an only child and is therefore solely responsible (he has a POA for his mother) for overseeing her affairs; so it will be necessary for him to identify another person to look after her while he is incarcerated. While departures based on family ties and responsibilities "are not ordinarily relevant in determining whether a departure may be warranted" (USSG 5H1.6), we would ask the Court to consider this at least as a consideration for variance under the 3553(a)(1) factor of "history and characteristics of the defendant."

Mr. Anderson has been involved in many social service and philanthropic activities over the years. He served as a board member and fundraiser for the Young Women's Resource Center in Des Moines from 1998 until 2002. Mr. Anderson served on the finance council for Good Shepherd Catholic Church in Shawnee for many years. He was instrumental in raising money for numerous causes at the church, and served a number of rotations on the Olathe Economic Development Council over the years. Mr.

Anderson has been involved in the City of Edgerton Frontier days for approximately 10 years where he raised money for the event and oversaw beverage service for the event. He helped raise funds for the City of Edwardsville, Kansas summer festival for a number of years.

During COVID, Mr. Anderson was appointed by the Johnson County Commission Chair to serve as the business representative on the re-opening committee for Johnson County, Kansas. This endeavor required a significant time commitment during COVID. Mr. Anderson worked with numerous small business owners to develop guidelines that would allow businesses to reopen while making sure customers were safe. During COVID, he also volunteered a significant amount of time advising the Iowa Restaurant Association and the Kansas Restaurant Association on various topics related to COVID. Mr. Anderson gave several presentations to local business leaders on COVID legislation and the PPP program. Mr. Anderson was also instrumental in organizing over 250 restaurants for litigation against insurance companies on business interruption insurance claims. He never billed anyone for these matters, working pro bono for his time on all of these issues during COVID, and he estimates he was working over 30 hours a week during COVID on these matters. Mr. Anderson would respectfully suggest that these actions may properly be grounds for a variance under the 3553(a) factors, and also as grounds for a departure under USSG 5H1.11 Record of Prior Good Works.

**The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense to afford adequate deterrence to criminal conduct**

Like the other factors found in 3553(a), these are by nature somewhat subjective, and opinions as to what is appropriate can and do vary depending on one's outlook and perspective. However, Mr. Anderson would suggest that most members of the public would think that a 120-month sentence in this case is sufficient to accomplish the sentencing objectives in 3553(a). It would seem difficult to reasonably claim that a sentence of this length, given to a 53-year-old non-violent offender who just suffered a serious heart attack, has lost his business and legal careers, and was ordered to pay over $3.7 million in restitution, is lenient.

**To protect the public from further crimes of the defendant**

Mr. Anderson would suggest that a sentence of 120 months would be more than sufficient to protect the public from any future crimes of the defendant. A sentence of 120 months will keep Mr. Anderson in custody until he is over 60 years of age by the time he is released. After that there will certainly be several more years of supervised release, where he will be monitored by a federal probation officer, and barred from seeking new lines of credit or loans without approval, among other restrictions.

As for his age, Mr. Anderson is 53 years old, with zero criminal history points. A U.S. Sentencing Commission survey conducted discusses the intersection between recidivism and age among federal defenders. This study is found at www.ussc.gov/research/research-reports/recidivism-federal-offenders-released-2010. In this report the Commission describes (at pages 24-26, attached hereto as Exhibit B)

9

how recidivism among federal offenders drops fairly dramatically once defendants enter their 50's, and shows a much lower recidivism rate for those in criminal history category I. Mr. Anderson falls into both categories. Statistically speaking therefore, Mr. Anderson would seem, especially in view of his conduct while on bond, to be a low risk of re-offending. In short, a sentence of 120 months in custody would certainly seem sufficient to protect the public.

**To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner**

Given Mr. Anderson's medical situation, we would ask that the Court recommend to the BOP that he be incarcerated in a medical facility as close to the Kansas City area as possible, and that the Court also recommend the 500-hour intensive treatment program (RDAP).

**Restitution as to MM and JR**

Each of these individuals have asked for restitution in this case. The PSR does not support that position, and the government has not objected to the PSR. To the extent the Court disagrees with the PSR in this case and believes that restitution for these individuals should be awarded, or wishes evidence on this point, we would ask that any restitution hearing as to MM and JR be bifurcated and adjudicated at a future date. That hearing would certainly be unusual, may even require additional briefing, and would likely lead to a complex and lengthy hearing, so bifurcation seems appropriate under these circumstances.

C.  **CONCLUSION**

For the reasons set forth herein, Mr. Anderson would respectfully request a sentence of 120 months in custody, with restitution as agreed to, followed by a term of supervised release at the Court's discretion.  Mr. Anderson believes that such a resolution reflects a reasonable compromise by the parties which saved the parties, this Court (and the appellate court due to his waiver of appeal) and probation office valuable time, and is fair and just under the circumstances.

Respectfully submitted,

*/s/ Robin D. Fowler*

------------------------------------------------
Robin D. Fowler              #11752
**BATH & EDMONDS, P.A.**
4000 W 114th Street, Suite 210
Leawood, KS  66211
(913) 652-9800; (913) 213-1849 (fax)
E-mail:  robin@bathedmonds.com
Attorney for Scott Anderson

**CERTIFICATE OF SERVICE**

I hereby certify that on May 13, 2025 I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send notice of electronic filing to all parties of record herein.

*/s/ Robin D. Fowler*

------------------------------------------------
Robin D. Fowler              #11752